

777 Westchester Ave, Suite 101
White Plains, New York 10604
(O) (914) 218-6190
(F) (914) 206-4176
www.ElHaglaw.com
Jordan@Elhaglaw.com

*The Firm that Fights for Workers' Rights!*

November 22, 2021

**Via ECF**

Hon. Paul E. Davison
United States Magistrate Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

                       Re:     *Request for approval of FLSA Agreement.*
                                    *7:20-cv-10161-PED*
                                    *Ortega Rojas et al v. Racanelli et al*

Dear Judge Davison,

       My office represents the Plaintiffs in the above referenced matter. I am pleased to advise the Court that the parties recently entered into a Negotiated Settlement Agreement ("Agreement"). As such, I write to request that the Court approve the Parties' proposed Agreement. I am submitting a fully executed settlement agreement and proposed Order of Voluntary Dismissal With Prejudice. If the Court finds that the agreement is fair and reasonable, I ask that the Court "So Order" the proposed Order of Voluntary Dismissal With Prejudice.

       The terms of the Agreement – attached hereto as Exhibit "A" – provide that in exchange for a release from Plaintiffs of any and all claims under the FLSA and related NY Labor Law claims set forth in the Complaint, Plaintiffs will receive a total gross sum of Forty-four Thousand Dollars ($44,000.00) (the "Settlement Amount"). From this, the Plaintiffs are paying 1/3 and costs as per their retainer agreement with their attorney.

       The Agreement, which complies with *Cheeks v. Freeport Pancake House, Inc.,* No. 14-cv-299 (2d Cir. 2015) ("Cheeks"), reflects a compromise between the Plaintiffs and the Defendants. The reasons this Agreement complies with Cheeks is as follows:

1. **Class/ Collective Status**. This settlement is not a class/collective settlement. It is limited to the named Plaintiffs. Therefore, there is no class representative premium computed in this action.

2. **Computation of Plaintiffs' FLSA Recovery.** Attached with this agreement as Exhibit B is a settlement/damage analysis. The method by which this settlement was achieved was by averaging the Defendants' damage computation and Plaintiffs' damage computation for unpaid wages. We then used that average as the agreed upon unpaid wages, added 50% for liquidated damages and 1/3 on top for attorney fees. However, after we presented the distribution to the clients, there was additional negotiation that took place to address the Plaintiffs' perceived inequities under the pro rata distribution. Accordingly, more money was added to compensate Plaintiff Cesario Ortega Rojas, which is why he has a rounded $4,000 settlement total.

   The Court should also note that Plaintiffs Valerio and Polanco are only receiving $500.0 each. They are being provided this amount because it was verified they worked for the Defendants before the limitations date (their claims timed out). Thus, they are receiving nominal amounts under the Agreement.

3. **Risks of litigation.** The risk of litigation here is that the Defendants did keep pay and time records. There were some discrepancies in the records, but the records are fairly accurate. The Defendants provided the records to Plaintiffs' counsel and an analysis was conducted. The claims are not substantial for each Plaintiff. Further, each Plaintiff confirmed that they clocked in and out everyday, and they cannot provide a convincing explanation of how the records would be inaccurate. Thus, it is reasonable to compute the damages by "meeting in the middle". Additionally, Plaintiff Cesario Ortega Rojas was admittedly a supervisor who was paid a legitimate salary and was exempt from receiving overtime for large periods of his employment. This was verified during informal discovery. Accordingly, the settlement potentially affords the Plaintiffs more than what they would collect if they prevailed at trial.

4. **Attorney fees are fair and reasonable.** Plaintiff's counsel is receiving $14,035.00 (consisting of $13,573.00 in attorneys' fees and $462.00 in costs) under the Agreement. This is $1,093.67 less than the 1/3 to which the Plaintiffs agreed to pay. In order to address the perceived inequities the Plaintiffs had with the pro rata distribution (they did not understand the exemption and felt that Cesario Ortega Rojas should receive more money under a former settlement proposal), I agreed to allocate part of my fees to him in order to demonstrate that this was a settlement which the firm believed was in everyone's best interest.

   I use a law practice management software called Clio. With this program I can create contemporaneous billing records that are logged into the program. I can then autogenerate a detailed bill of the hours and expenses I have expended on any one of my cases. This is the program I used to generate my time records here.

The lodestar is $5,554.00 computed at an hourly rate of $350 per hour for a total of 16.44 hours. This rate has been an approved rate in dozens of FLSA cases. [1] The recovery payment to my firm also includes expenses totaling $462, which is the $402 filing fee to start the action and $60 in process serving fees.

The $350 hourly rate is appropriate. I have approximately 19 years of experience in industrial labor relations representing union members in various tribunals and litigating a broad array of labor and employment violations. I serve as chief-trustee on three Taft-Hartley multi-employer welfare and pension funds, and have been admitted to practice law for the past 9 years dealing almost exclusively in representing plaintiffs in claims arising under the FLSA, Title VII, the Family Medical Leave Act and the related New York State Labor Laws.

My normal hourly rate is $350. This is the hourly rate that I charge clients who pay me hourly. My $350 hourly rate been repeatedly approved by the federal judiciary. *See, e.g.,* 7:17-cv-03288-CS-JCM, 7:17-cv-05638-CS 7:17-cv-06093-LMS*,* 7:17-cv-01870-NSR*,* 7:16-cv-09370-VB. This rate is commensurate in the market with employment litigation attorneys in this area. See *Gamero v. Koodo Sushi Corp.,* 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018)( Holding law firm partner entitled to $400 hourly rate and associate $300 per hour); *Pineda v. Frisolino, Inc.*, No. 15CIV3774GBDBCM, 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018)( Holding law firm partner entitled to $450 hourly rate and associate $350 hourly rate). I have substantially more experience than a law firm associate, but less experience than a twenty-year litigation partner. Accordingly, the appropriate hourly rate is $350 because it falls between $300 and $400 per hour.

Not only do I have extensive experience representing individual employees like the Plaintiffs herein, many of the cases I litigate have been multi-plaintiff claims for unpaid wages under the Fair Labor Standards Act and the New York Labor Law; see: 1:14-cv-00183-HBP, 1:14-cv-01018-GBD-RWL, 1:17-cv-09063-JMF, 7:15-cv-02177-CS, 7:15-cv-02305-CS, 7:15-cv-08887-KMK, 7:16-cv-09153-KMK, 1:17-cv-06217-FB-SMG, 2:15-cv-00182-AYS, 2:15-cv-03980-JMA-ARL, 53226/2017 (NYS Supreme Court White Plains). I have also successfully litigated unpaid wage claims to verdict. *Pearson v. Fort Schuyler House, Inc.* 50386/2017 Westchester Supreme Court.

Furthermore, I assumed the risk of this lawsuit because I took this case on a contingency basis. Plaintiffs are not paying an hourly rate. Multiplying the hourly rate formula has been held to be a reasonable method to compute fairness because it accounts for the risk incurred by my firm to bring Plaintiffs' claims to a conclusion. At minimum, multiplying the lodestar by 2 is the bare minimum to account for contingency risk. For instance, in *Fujiwara v. Sushi Yasuda Ltd.,* 58

---

[1] See sampling: 1:14-cv-00183-HBP, 1:14-cv-01018-GBD-RWL, 1:17-cv-09063-JMF, 7:15-cv-02177-CS, 7:15-cv-02305-CS, 7:15-cv-08887-KMK, 7:16-cv-09153-KMK, 1:17-cv-06217-FB-SMG, 2:15-cv-00182-AYS, 2:15-cv-03980-JMA-ARL, 53226/2017

F.Supp.3d 424, 439 (S.D.N.Y. 2014), the court held that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately." *See, also,* Sanchez v. JMP Ventures, LLC, 2015 WL 539506 at *6 (S.D.N.Y. 2015)("persuasive case law suggests that a multiplier as high as 2.0 is appropriate to compensate 'for the risk associated with contingent fees in FLSA cases'").

However, a multiplier of 2 is at the low end of the spectrum. Courts consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.,* 888 F. Supp. 551, 562 (S.D.N.Y. 1995); see also *Goldberger,* 209 F.3d at 47; *Savoie v. Merchants Bank,* 166 F.3d 456,460 (2nd Cir. 1999). Courts regularly award lodestar multipliers of up to eight (8) times lodestar, and in some cases, even higher multipliers. See, e.g., *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.,* 2002 U.S Dist. LEXIS 22663, at **78- 79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley,* 186 F. Supp. 2d at 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *Davis v. JP. Morgan Chase & Co.,* 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier "toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases.")

Here, a multiplier of 2.5x is appropriate because this is a multi plaintiff case where the firm took on high risk clients in good faith. Records were obtained, analyzed, and verified, and it turns out the Plaintiffs were incorrect about many aspects of their case. The case was negotiated at length and a recovery greater than the potential at trial was recovered. Furthermore, Plaintiffs' counsel cut its fee to less than 1/3, which "[c]ourts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." <u>Santos v. YMY Mgmt. Corp.</u>, No. 20-cv-1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021) (quotation marks and brackets omitted).

5. **FLSA Release is narrowly tailored.** Pursuant to Cheeks, the release of claims under the FLSA in consideration for the monetary compensation Plaintiffs are receiving is narrowly tailored to only release the wage and hour related claims.

6. **Negotiation at arm's length.** This settlement was reached at arm's length. The parties negotiated the agreement through the SDNY mediation program, although the parties reached a settlement before a formal mediation session was held.

      For the foregoing reasons, Plaintiffs and Defendants believe that the Settlement Amount represents a fair and equitable compromise of disputed claims pursuant to Cheeks. In light of the above, Plaintiffs and Defendants respectfully request that this Court approve the Parties' Agreement.

      We sincerely thank the Court for its time and consideration in this matter.

      Respectfully submitted,

*Jordan El-Hag*

Jordan El-Hag, Esq.
Counsel for Plaintiffs